UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| MICHELLE FRANCIS, | ) | |
| | ) | |
| Plaintiff(s), | ) | No.  C08-2468 BZ |
| | ) | |
| v. | ) | |
| | ) | **ORDER GRANTING** |
| TELECARE CORPORATION, | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Defendant(s). | ) | |

Defendant Telecare Corporation ("defendant" or "Telecare") has moved for summary judgment pursuant to Fed. R. Civ. Proc. 56 on plaintiff Michelle Francis' ("plaintiff") complaint, on the basis that defendant has no liability for allegedly delaying a distribution to plaintiff from its Employee Stock Ownership Plan.[1]  For the reasons set forth below, defendant's motion is **GRANTED**.

It is undisputed that plaintiff, an African-American woman, was employed by Telecare from July 2001 until she resigned on May 18, 2006.  During her employment, plaintiff

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment pursuant to 28 U.S.C. § 636(c).

1

participated in Telecare's Employee Stock Ownership Plan ("ESOP"), and at the time of her resignation, her vested ESOP account balance totaled over $3,000.00.

Effective July 1, 2005, Telecare revised its ESOP distribution policy.[2] Plaintiff was advised of Telecare's revised ESOP distribution policy in November 2006. (Francis Decl. ¶ 9.) The revised policy provided that former Telecare employees would first be eligible to receive a distribution of vested ESOP balances on December 31 of the year following the year in which the employee's employment with Telecare ended. Plaintiff's employment with Telecare ended in 2006; therefore, by the terms of the policy, plaintiff became eligible for an ESOP distribution on December 31, 2007.

In May 2007, plaintiff complained to the U.S. Department of Labor that defendant was discriminating against her by failing to make a timely distribution of plaintiff's ESOP benefit payments.[3] After reviewing Telecare's July 1, 2005 ESOP distribution policy, the Department of Labor informed plaintiff that because her employment terminated in May 2006, she was not eligible for an ESOP distribution until December

---

[2] Effective July 1, 2005, Telecare changed its tax reporting to a calendar year, instead of a fiscal year, in order to save on taxes.

[3] Plaintiff's understanding of the ESOP distribution policy was that she would be eligible to receive her ESOP benefits by June 2007. This belief was based on a series of conversations that plaintiff had with Telecare's Benefits Manager, Jasmine Wilson. Ms. Wilson testified at her deposition that she mistakenly told plaintiff that plaintiff would receive her ESOP distribution paperwork in May or June 2007, and that this mistake was due to Ms. Wilson's reliance on Telecare's former ESOP distribution policy, which was based on the fiscal year, as opposed to the calendar year.

31, 2007.

In November 2007, Telecare hired Principal Financial Group ("Principal") to act as the administrator of its ESOP. Based on data Telecare provided, which included the names of all former Telecare employees that had account balances in the ESOP, on December 5, 2007, Principal generated and mailed letters to all individuals eligible for a 2007 ESOP distribution to notify them of their eligibility to receive an ESOP distribution if they elected to receive one by December 26, 2007.[4]  Plaintiff did not elect a distribution within the applicable election window.  Many other Telecare employees also failed to elect a distribution within the applicable election window, partly due to the fact that out of approximately 330 distribution letters that were sent, 113 of were returned as undeliverable.

In January 2008, defendant decided to provide those employees who did not elect an ESOP distribution during the 2007 election window with another opportunity to receive their vested ESOP benefits.  On May 2, 2008, defendant notified plaintiff and other former employees who had missed the original distribution window that they had until August 2, 2008 to elect to receive an ESOP distribution.

On July 23, 2008, plaintiff elected to receive an ESOP distribution, and on August 18, 2008, plaintiff received her

---

[4] Defendant submitted evidence that the list of current and former employees that it sent to Principal did not state the race or national origin of any of the individuals on the list and that Principal would have had no way of identifying the race or national origin of any of the Telecare employees.

3

ESOP benefit payment.  Plaintiff does not have any remaining balance in the ESOP.

Plaintiff's complaint alleges causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. and under the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940 *et seq*. for discrimination on the basis of race in delaying her distribution and for delaying her distribution in retaliation for her administrative complaint.

Defendant argues that it did not discriminate in sending plaintiff her ESOP distribution.  Rather, defendant claims that plaintiff was not eligible to receive her vested ESOP benefits until December 2007, and that when plaintiff received her distribution election letter in December 2007, she failed to fill out and mail back the necessary election paperwork, which constituted a waiver of her right to receive a distribution from the ESOP in 2007.  In support of its argument, defendant has provided the Court, *inter alia*, with a copy of the Telecare ESOP Distribution Policy, effective July 1, 2005; a copy of its ESOP Plan Description, dated November 2006; and excerpts from the depositions of, among others, Kevin Rusch, the Client Relations Manager at Principal.

Plaintiff, in order to establish a *prima facie* case that defendant discriminated against her by unreasonably delaying the distribution of her ESOP benefits, must show (1) that she is a member of a protected class; (2) that she was eligible to receive the employment benefit at issue; (3) that despite her eligibility, she was subject to adverse treatment; and (4)

4

that similarly situated individuals outside of the protected class were treated more favorably. <u>Chuang v. University of California, Board of Trustees</u>, 225 F.3d 1115, 1123-24 (9th Cir. 2000); *see also* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973).  Actual proof of discrimination is not required for a *prima facie* case; all plaintiff must do is raise an inference that such misconduct occurred. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 442 (9th Cir. 1995).  Title VII also provides that a plaintiff establishes an unlawful employment practice "when [she] demonstrates that . . . race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

If plaintiff succeeds in establishing a *prima facie* case for discrimination, the burden shifts to defendant to set forth, through the introduction of admissible evidence, its purported legitimate, non-discriminatory reason(s) for the adverse employment action. <u>Texas Dept. of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 255 (1981).  The sufficiency of defendant's evidence should be evaluated by the extent to which it (1) meets the plaintiff's *prima facie* case by presenting a legitimate reason for the action, and (2) frames the factual issues with sufficient clarity to allow the plaintiff a full and fair opportunity to demonstrate pretext. <u>Id.</u> at 255-56.  Once a defendant provides a valid, non-discriminatory reason for taking the alleged adverse employment action, the burden shifts back to plaintiff to show that defendant's justification for its decision is pretextual.

McDonnell Douglas, 411 U.S. at 804.  Plaintiff may meet this burden either by presenting direct or circumstantial evidence that discrimination was more likely than not a motivating cause of defendant's actions, or by attacking the credibility of the defendant's reasons for its actions.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996). If plaintiff fails to make such a showing, the defendant's motion for summary judgment must be granted.  McDonnell Douglas, 411 U.S. at 804.

With regard to her race discrimination claim, plaintiff, an African-American woman, asserts that she is a member of a protected class who did not receive employee benefits that she was eligible to receive in 2007 until late 2008.  Plaintiff identified at least one other individual who she claims was similarly situated, who is not a member of a protected class, and who received ESOP distribution benefits before plaintiff received her benefits.

Serious questions exist as to whether plaintiff has made out a *prima facie* case for race discrimination.  As a threshold matter, I note that while plaintiff declares that she did not receive the December 5, 2007 ESOP election letter, to show discrimination by defendant, she needs to offer proof that defendant did not mail the letter.[5]  There are many reasons, such as lost or stolen mail, why plaintiff may not have received the letter.  On this point, plaintiff has not

---

[5] Plaintiff's contention is that because of her race, Telecare intentionally omitted plaintiff's name from the list of employees that it gave to Principal, which is why plaintiff was never sent an ESOP election form in 2007.

6

1   raised a genuine issue of material fact as to whether her ESOP
2   election form was sent to her by Principal.  Defendant has
3   presented evidence that Principal sent plaintiff an ESOP
4   distribution letter, along with approximately 300 other
5   letters to eligible employees, via regular first class mail,
6   and that the letter sent to plaintiff was never returned to
7   Principal as undeliverable.  (Decl. of Anne-Marie Waggoner,
8   Ex. B. p. 14, 24, 25.)  Defendant also provided the Court with
9   a copy of the letter that was sent to plaintiff.  Plaintiff
10  offered no evidence that Principal failed to follow its
11  ordinary business procedure in sending her the standard ESOP
12  election letter that it sent to all eligible Telecare
13  employees.  Plaintiff simply says that she did not receive the
14  letter, yet she also admits that the address to which
15  defendant claims to have sent the letter was her correct
16  mailing address.  (Francis Decl. ¶ 13.)  Mere denial of
17  receipt does not raise a genuine issue of material fact as to
18  mailing.[6]  <u>Mahon v. Credit Bureau of Placer County Inc.</u>, 171

---

[6] Even if actual receipt of the letter was material to this dispute, I find that defendant is entitled to a presumption that plaintiff received a distribution election letter in December 2007.  The common law mailbox rule provides that "'proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.'" <u>Mahon</u>, 171 F.3d at 1202 ("Under the common law mailbox rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee.")  In <u>Mahon</u>, the court held that the plaintiff's mere assertions of non-receipt of a letter did not rebut the presumption, established by evidence of the defendant's standard mailing procedures, that the letter had been sent.  <u>Id.</u>  As in <u>Mahon</u>, plaintiff's statements of non-receipt are not enough to overcome the presumption that the December 5, 2007 ESOP distribution election letter was sent and received. Additionally, even if plaintiff could rebut the presumption of receipt, plaintiff has provided no evidence that defendant

7

1   F.3d 1197, 1201-02 (9th Cir. 1999) (quoting Anderson v. United
2   States, 966 F.2d 487, 491 (9th Cir. 1992)); *see also* Meckel v.
3   Continental Resources Co., 758 F.2d 811, 817 (2d Cir. 1985).

Plaintiff also offers her declaration that in January 2008, she spoke to an unidentified person at Principal who informed her that Telecare had not notified Principal that plaintiff was eligible to receive her ESOP benefits and that she was not in Principal's system. (Francis Decl. ¶ 39.) I find this evidence to be too ambiguous to create an issue of fact as to whether plaintiff's ESOP election letter was sent by Principal in 2007. It appears to confirm that in January 2008, plaintiff was not eligible to receive benefits because she had not submitted a timely election. In light of the evidence submitted by both parties, I find that no reasonable jury could conclude that an ESOP distribution election letter was not sent to plaintiff by Principal.

It is also doubtful that she has experienced adverse treatment, since she timely received her ESOP benefits after she applied for the distribution in 2008. Additionally, plaintiff has not identified any similarly situated individuals, outside of a protected class, who were treated more favorably. To have been treated more favorably, an individual, not within a protected class, must have ended employment with Telecare in 2006, and received an ESOP

---

acted with discriminatory intent in failing to send her the distribution election letter. Costa v. Desert Palace, Inc., 299 F.3d 838, 854 (9th Cir. 2002), *aff'd by* Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). There is no evidence, direct or circumstantial, of discriminatory intent. *See* Vasquez v. County of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).

distribution in 2007 despite having failed to submit the necessary election paperwork within the election window provided by Telecare.  In her declaration, plaintiff identifies four individuals who she claims were treated more favorably than she.  Preliminarily, plaintiff has submitted no evidence that these individuals did not timely elect to receive the distributions they received.  In any event, defendant has introduced evidence that all of the four received a distribution consistent with the revised distribution policy (December of the year following their termination), and plaintiff has submitted no evidence to the contrary.[7]

   Defendant has also introduced evidence that other African-American employees were sent ESOP distribution letters.  This evidence suggests that even if a letter was not sent to plaintiff, it was not because of racial animus.  Even assuming, however, that plaintiff established a *prima facie* case for race discrimination, Telecare has offered a legitimate, nondiscriminatory reason for its conduct, and plaintiff has failed to establish that its reason is pretextual.  Aside from plaintiff's mere assertions, there is no evidence before the Court that defendant's alleged delay in sending plaintiff her ESOP distribution payment was motivated by discriminatory intent.  Based on the record before the Court, plaintiff has failed to create a triable issue as to whether Telecare's stated reason for sending plaintiff her

---

   [7]   In fact, plaintiff's declaration affirms defendant's position.  (*See* Francis Decl. ¶ 27.)

9

1   ESOP distribution in 2008 (failure on the part of plaintiff to
2   timely submit the necessary paperwork) was pretextual.  *See*
3   Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir.
4   1998).  Accordingly, plaintiff's Title VII discrimination
5   claim does not survive summary judgment.
6       As with plaintiff's discrimination claim, plaintiff must
7   also set forth a *prima facie* case for her retaliation claim.[8]
8   To establish a *prima facie* case for unlawful retaliation,
9   plaintiff must show that: 1) she engaged in protected
10  activity; 2) her employer subjected her to an adverse
11  employment action; and 3) there is a causal link between the
12  protected activity and the adverse employment action.  Davis
13  v. Team Elec. Co., 520 F.3d 1080, 1094 (9th Cir. 2008); *see*
14  *also* Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018,
15  1035 (9th Cir. 2006); Ray v. Henderson, 217 F.3d 1234, 1240
16  (9th Cir. 2000).
17      Plaintiff argues that she engaged in protected activity
18  by filing a complaint of racial discrimination with the U.S.
19  Department of Labor in May 2007 and that Telecare retaliated
20  against her for complaining by unlawfully delaying her ESOP
21  distribution.  Again, it is doubtful that plaintiff has
22  experienced an adverse employment action, since she timely
23  received her ESOP benefits after she applied for the
24  distribution in 2008 and she has not satisfactorily disputed

---

[8] The McDonnell Douglas framework governs the analysis of both discrimination and retaliation claims in the summary judgment context.  *See* McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1122, 1124 (9th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).

1 defendant's evidence that she was mailed a distribution letter
2 on December 5, 2007.  Nor has plaintiff has provided any
3 evidence, aside from her own assertions, that defendant's
4 alleged delay in sending plaintiff her ESOP distribution
5 payment was causally related to plaintiff's communication with
6 the Department of Labor.  Even if plaintiff's evidence is
7 sufficient to establish a *prima facie* case for retaliation,
8 plaintiff fails to set forth any evidence to demonstrate that
9 defendant's asserted reason for the delay in plaintiff's ESOP
10 distribution payment is pretextual.  Plaintiff's conclusory
11 assertions that her complaint to the Department of Labor was a
12 motivating reason for Telecare's failure to distribute
13 plaintiff's ESOP benefit payment to her by December 2007 are
14 insufficient to avoid summary judgment.  <u>Collings v. Longview</u>
15 <u>Fibre Co.</u>, 63 F.3d 828, 834 (9th Cir. 1995); *see also* <u>Wallis</u>
16 <u>v. J.R. Simplot Co.</u>, 26 F.3d 885, 890-91 (9th Cir. 1994).[9]

17     Plaintiff's second cause of action for violations of FEHA
18 fall within ERISA's preemptive scope.  ERISA preempts "any and
19 all State laws insofar as they may now or hereafter relate to
20 any employee benefit plan" governed by ERISA.  29 U.S.C. §

---

[9]     During argument, plaintiff's counsel asserted that the "timing" of the events at issue, which amounts to a period of seven months, is sufficient to create a causal link between the protected activity and the adverse employment action.  The Ninth Circuit has rejected any bright-line rules about the timing of retaliation, and has held that "[w]hether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances."  <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 978 (9th Cir. 2003).  Beyond timing, plaintiff offers no other evidence of the "surrounding circumstances" that would create a genuine dispute concerning whether defendant's conduct, assuming it was adverse, was retaliatory.

1144(a); <u>Geweke Ford v. St. Joseph's Omni Preferred Care Inc.</u>, 130 F.3d 1355, 1358 (9th Cir. 1997); <u>Gibson v. Prudential Ins. Co. of Am.</u>, 915 F.2d 414, 416 (9th Cir. 1990).  "Even claims brought under state-law doctrines that do not explicitly refer to employee benefit plans are preempted when the claims arise from the administration of such plans whether directly or indirectly."  <u>Gibson</u>, 915 F.2d at 414 (citing <u>Ellenburg v. Brockway, Inc.</u>, 763 F.2d 1091, 1095 (9th Cir. 1985)).  Plaintiff's FEHA claim directly relates to her contention that she did not receive a timely distribution of her ESOP benefits because of race discrimination and unlawful retaliation.  This claim is therefore connected to the ESOP, which is related to an ERISA plan and is therefore preempted by ERISA.

    Viewing the evidence in the light most favorable to the plaintiff, I find that plaintiff failed to create a triable issue of fact over whether defendant discriminated or retaliated against her by distributing her ESOP benefit payments in 2008.

    For the reasons discussed above, **IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** with respect to all claims.

Dated:  June 4, 2009

                                      Bernard Zimmerman
                              United States Magistrate Judge

G:\BZALL\-BZCASES\FRANCIS\ORDER GRANTING SUMMARY JUDGMENT.wpd